ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| OFICINA DE ÉTICA GUBERNAMENTAL<br><br>Recurrido<br><br>v.<br><br>KARILYN BONILLA COLÓN<br><br>Recurrente | **KLRA202400155** | *REVISIÓN ADMINISTRATIVA* procedente de Oficina de Ética Gubernamental<br><br>Caso Núm.: 23-29<br><br>Sobre: Violación al Artículo 4.2, incisos (b) y (r) de la Ley de Ética Gubernamental, Ley Núm. 1-2012 |

Panel integrado por su presidente, el Juez Rodríguez Casillas[1], el juez Bonilla Ortiz y el juez Pagán Ocasio.

Bonilla Ortiz, Juez Ponente

## **SENTENCIA**

En San Juan, Puerto Rico, a 15 de noviembre de 2024.

Comparece ante este foro, la Sra. Karilyn Bonilla Colón (señora Bonilla o "la recurrente"), y nos solicita que revisemos una *Resolución* emitida por la Oficina de Ética Gubernamental de Puerto Rico (OEG o "la agencia recurrida"), la cual fue notificada el 29 de febrero de 2024. Mediante esta, la OEG acogió la totalidad del *Informe de la Oficial Examinadora* y, determinó que la señora Bonilla incurrió en una violación a los incisos (b) y (r) del Art. 4.2 de la Ley Núm. 1-2012, según enmendada, conocida como la *Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico*, 3 LPRA sec. 1854 *et seq.* (Ley Núm. 1-2012). En consecuencia, la agencia recurrida le impuso a la recurrente una multa administrativa de $2,000.00 por cada una de las

---

[1] En virtud de la Orden Administrativa OATA-2024-039, se designa al Hon. Roberto Rodríguez Casillas.

infracciones cometidas. Además, le ordenó a que restituyese la suma de $15,914.42 por concepto de la pérdida de fondos públicos ocasionada con sus actos.

Por los fundamentos que se exponen a continuación, se **REVOCA** el dictamen administrativo recurrido.

I.

El 9 de diciembre de 2022, la OEG presentó una *Querella* contra la señora Bonilla en la que se alegaron violaciones a los incisos (b) y (r) del Art. 4.2 de la Ley Núm. 1-2012, *supra*.[2] La agencia recurrida alegó que, con fecha de efectividad de 14 de enero de 20213, la recurrente, quien fungía como alcaldesa del municipio de Salinas, nombró a la Sra. Jessica González Carbonell (señora González) en el puesto de confianza de ayudante administrativa de la alcaldesa en el municipio de Salinas. Además, arguyó, que la señora Bonilla desde el 11 de octubre de 2013 hasta el 31 de julio de 2020, designó en múltiples ocasiones a la señora González como directora interina de la oficina de finanzas del municipio de Salinas. Sostuvo que, la recurrente autorizó el pago de un diferencial de $527.00 mensuales por los interinatos de la señora González. Ello, para un total desembolsado de $15,914.42, durante los meses de 19 de octubre de 2017 hasta el 5 de agosto de 2018 y, desde 24 de octubre de 2018 hasta el 31 de julio de 2020.

A su vez, esbozó que la señora González fue designada por la recurrente como directora interina de la oficina de finanzas en el municipio de Salinas sin contar con la preparación académica en administración de empresas, según lo requería el Art. 6.002 de la Ley Núm.

---

[2] *Querella*, Anejo 1, págs. 1-5 del apéndice del recurso.

81 de 30 de agosto de 1991 intitulada *Ley de Municipios Autónomos de Puerto Rico*, 31 LPRA sec. 4001 *et seq.* (Ley Núm. 81 de 1991) y la Sección 6.2 del *Reglamento de Retribución* aprobado el 22 de abril de 2013, mediante ordenanza núm. 25 serie 2012-2013 (Reglamento de Retribución). Además, adujo que, la señora González no cumplió con los requisitos mínimos académicos ni la experiencia mínima requerida para ocupar el puesto de directora de la oficina de finanzas, por lo que tampoco tenía derecho a recibir el diferencial. Así pues, enfatizó que la señora Bonilla, designó a una funcionaria para ocupar un puesto interinamente sin cumplir con los requisitos de preparación y experiencia, en violación al Art. 4.2 (b) y (r) de la Ley Núm. 1-2012, *supra*. Por todo lo anterior, solicitó la imposición de una multa administrativa al amparo del Art. 4.7 (c) de la Ley Núm. 1-2012, *supra*. Asimismo, solicitó se ordenara la restitución de $15,914.42 y, efectuara un descuento de la nómina del servidor público infractor, hasta completar el pago de la multa impuesta.

En respuesta, 17 de enero de 2023, la señora Bonilla presentó su *Contestación a Querella* en la cual negó la mayoría de las alegaciones.[3] Entre sus defensas afirmativas, planteó que no utilizó sus facultades para beneficiar a la señora González. Sostuvo que la designación fue investigada por la Oficina del Contralor de Puerto Rico (Oficina del Contralor) y, dicha agencia no realizó señalamiento alguno de violaciones a la Ley Núm. 1-2012, *supra*, tampoco determinó la existencia de malversación de fondos, corrupción o uso indebido de

---

[3] *Contestación a Querella*, Anejo II, págs. 6-9 del apéndice del recurso.

fondos públicos. De igual forma, argumentó que, con el paso del huracán María resulto difícil reclutar a una persona que asumiera la posición de director de finanzas del municipio, por lo que la señora González comenzó a realizar simultáneamente las funciones del puesto de ayudante administrativo y directora de finanzas. Así pues, razonó que el diferencial desembolsado fue otorgado, toda vez que esta estaba realizando funciones de ambos puestos. Por último, indicó que la señora González tenía experiencia en el manejo de presupuesto y uso de fondos públicos, dado que había desempeñado varios puestos ejecutivos en el municipio de Guánica y, fue designada como alcaldesa interina, directora de finanzas, directora de recursos humanos y programas federales en el municipio de Salinas. En virtud de lo anterior, solicitó se desestimara la *Querella*.[4]

Tras varias incidencias procesales, el 16 de agosto de 2023, la OEG presentó su *Moción Solicitando Adjudicación Sumaria* y enumeró veinte (20) hechos que, a su juicio, no estaban en controversia.[5] Así pues, esgrimió que, ante la inexistencia de hechos esenciales y pertinentes en controversia, lo que restaba determinar era si la recurrente designó en varias instancias a la señora González para que ocupara de manera interina el puesto de directora de finanzas del municipio de Salinas.

De otra parte, reiteró que, la señora Bonilla debió conocer los requisitos mínimos y los requisitos alternos

---

[4] *Informe de Conferencia con Antelación a la Audiencia*, Anejo III, págs. 10-31 del apéndice del recurso. El 12 de julio de 2023, las partes presentaron el *Informe de Conferencia con Antelación a la Audiencia*.
[5] *Moción Solicitando Adjudicación Sumaria*, Anejo IV, págs. 32-227 del apéndice del recurso.

a cumplir por un director de finanzas. Apuntó que, la señora González tenía un bachillerato en química y un bachillerato en ingeniería civil. Además, aclaró que tampoco hubo una determinación por parte del municipio que estableciera la dificultad en el reclutamiento de algún funcionario bajo los requisitos para dicho puesto. Así, como tampoco puso a la disposición de la legislatura municipal la evaluación de la señora González u otros candidatos, según lo requería la Ley Núm. 81 de 1991, *supra*.

Por tanto, razonó que la señora González no podía cobrar el diferencial. Aclaró, que era entendible que se acudiese a los interinatos. Sin embargo, resaltó que levantaba interrogantes el periodo de tiempo prolongado por el que se concedió dicho interinato y el diferencial. Por todo lo anterior, la OEG entendió que procedía resolver la controversia de manera sumaria toda vez que, la señora Bonilla era funcionara pública al momento de designar a la señora González al puesto de directora de finanzas y desembolsar el diferencial, por lo que violentó el Art. 4.2, incisos (b) y (r) de la Ley Núm. 1-2012, *supra*. Así pues, solicitó la imposición de multas al amparo del Art. 4.7 (c) de la Ley Núm. 1-2012, *supra*.

En desacuerdo, el 25 de agosto de 2023, la recurrente presentó su *Oposición a:"Moción Solicitando Adjudicación Sumaria"*.[6] En síntesis, desglosó los hechos que entendía estaban en controversia y los que no. Particularmente, planteó que las alegaciones de la OEG no contenían los elementos necesarios para la

---

[6] *Oposición a:"Moción Solicitando Adjudicación Sumaria"*, Anejo V, págs. 2228-248 del apéndice del recurso.

configuración de los artículos imputados a la recurrente. Sostuvo que, tampoco contaban con prueba que satisficiera el estándar de prueba clara, robusta y convincente, por lo que procedía celebrar una vista para aquilatar la prueba y credibilidad de los testigos. A su vez, expresó que realizar una adjudicación, sin considerar los hechos particulares que experimentó el municipio de Salinas, era ir en contravención del derecho. De igual forma, señaló que, contrario a la recurrida, presentó declaraciones juradas, las cuales establecían las circunstancias en las que se designó a la señora González para realizar las funciones de directora de finanzas. Además, esbozó que dichas declaraciones juradas demostraban que nunca existió la intención de beneficiar a la señora González. En virtud de lo anterior, solicitó se declarase No Ha Lugar la *Moción Solicitando Adjudicación Sumaria*.

Luego, el 7 de septiembre de 2023, la OEG presentó su *Réplica a Oposición a Moción Solicitando Adjudicación Sumaria* en la cual reiteró los planteamientos de su *Moción Solicitando Adjudicación Sumaria*.[7] Por su parte, el 12 de septiembre de 2023, la recurrente presentó su *Dúplica a: "Réplica a Oposición a Moción Solicitando Adjudicación Sumaria"*.[8]

Así las cosas, el 18 de septiembre de 2023, la Oficial Examinadora de la OEG notificó una *Orden* en la cual dejó sin efecto la audiencia señalada para el 17,19,24 y 26 de octubre de 2023.[9] Posteriormente, el 22 de febrero de 2024, la Oficial Examinadora de la OEG

---

[7] *Réplica a Oposición a Moción Solicitando Adjudicación Sumaria*, Anejo Vi, págs. 249-269 del apéndice del recurso.
[8] *Dúplica a:" Réplica a Oposición a Moción Solicitando Adjudicación Sumaria"*, Anejo VII, págs. 270-272 del apéndice del recurso.
[9] *Orden*, Anejo VII, págs. 273-275 del apéndice del recurso.

emitió su *Informe de la Oficial Examinadora* en la que recomendó a que encontrase a la señora Bonilla incursa en violación a los incisos (b) y (r) del Art. 4.2 de la Ley Núm. 1-2012, *supra*, e impusiera una multa al amparo del Art. 4.7 (d) de dicha Ley.[10] Por último, apercibió que podía ordenarle a la recurrente la restitución de la suma de $15,914.42 por concepto de la pérdida de fondos públicos ocasionada por sus actos. A su vez, incluyó las siguientes determinaciones de hechos:

1. La señora Bonilla-Colón es la alcaldesa del Municipio de Salinas y la máxima autoridad nominadora del municipio, desde el 2013 hasta el presente.

2. Como alcaldesa del Municipio de Salinas, la querellada tiene la facultad de nombrar los sustitutos interinos de los funcionarios que sean directores de unidades administrativas en caso de ausencia temporal o transitoria de éstos y de otorgar diferenciales.

3. La señora González-Carbonell comenzó a trabajar en el Municipio de Salinas desde que la querellada la nombró su ayudante administrativa el 14 de enero de 2013.

4. El puesto de ayudante administrativa de la alcaldesa se encuentra dentro del servicio de confianza.

5. La naturaleza del trabajo de ayudante administrativo es de carácter ejecutivo que consiste en planificar, coordinar, dirigir y supervisar actividades administrativas u operaciones que le sean delegadas por el alcalde. Los aspectos distintivos del puesto son los siguientes:

   a. Realizar trabajo de gran complejidad y responsabilidad colaborando con el alcalde en la atención de diversos asuntos que se generan en el Municipio.
   b. Es el funcionario de mayor jerarquía en orden de sustitución del alcalde.

---

[10] *Resolución*, Anejo VIII, págs. 276-300 del apéndice del recurso.

c. Es responsable de proveer al alcalde la ayuda necesaria para coordinar y supervisar la fase administrativa del Municipio.
d. Asesorar y participar activamente en la elaboración e implementación de la política pública a establecerse.
e.Trabaja bajo la supervisión administrativa del Alcalde, quien le imparte instrucciones generales en los aspectos comunes del puesto y específicas en situaciones especiales.
f. Vela por el fiel cumplimiento de las normas legales y reglamentarias a los asuntos bajo su atención.
g. Como parte de su trabajo, realiza cualquier otra función por encomienda del Alcalde.
h. Ejercer un alto grado de iniciativa y criterio propio en el desempeño de sus labores.

6. A enero de 2013, la señora González-Carbonell tenía la siguiente experiencia de empleo:"

a. Auxiliar de ingeniería I en el Departamento de Transportación y Obras Públicas en la Oficina Regional de San Juan;
b. Directora de Obras Públicas en el Municipio de Guánica desde el 3 de enero de 2006 hasta el 31 de diciembre de 2008;
c. Ayudante especial-Planificación del Municipio de Guánica desde el 1 de enero de 2009 hasta el 30 de noviembre de 2010;
d. Directora de Programas Federales del Municipio de Guánica desde el 1 de diciembre de 2010 hasta el 31 de diciembre de 2012.

7. La señora González-Carbonell tiene un Bachillerato en Química y otro en Ingeniería Civil. Sin embargo, durante sus estudios universitarios no completó ningún curso relacionado con contabilidad o finanzas.

8. La querellada designó, de manera interina, a la señora González-Carbonell como directora de Finanzas en siete ocasiones, específicamente, en las siguientes fechas:
   a. 11 de octubre de 2013;
   b. 28 de abril de 2014;
   c. 31 de agosto de 2015;
   d. 15 de abril de 2016;
   e. 1 de marzo de 2017;
   f. 9 de agosto de 2017;

g. 14 de agosto de 2017.

9. La Sra. Ángeles Rivera González ocupaba el puesto de directora de Finanzas del Municipio de Salinas y presentó su renuncia, efectiva el 18 de septiembre de 2017.

10. Conforme al Plan de Clasificación y Retribución del Servicio de Confianza del municipio, el puesto del director de Finanzas del Municipio de Salinas pertenece a la escala salarial 10, mientras que el puesto de ayudante administrativo de la alcaldesa pertenece a la escala salarial 11, siendo este último puesto el funcionario de mayor jerarquía en orden de sustitución del alcalde.

11. La naturaleza del trabajo del puesto del director de Finanzas del Municipio de Salinas es especializada y consiste en dirigir, planificar, coordinar y supervisar todas las actividades administrativas u operacionales que le sean delegadas por el alcalde. Dentro de los aspectos distintivos de este puesto están los siguientes:

a. Realizar trabajo de considerable complejidad y responsabilidad que consiste en la dirección, planificación, coordinación y supervisión que se le llevan a cabo en la Oficina de Finanzas del Municipio de Salinas.
b. Trabajar bajo la supervisión administrativa del alcalde, de quien recibe instrucciones generales sobre las tareas del puesto, pero consulta al alcalde en situaciones nuevas o fuera de su autoridad.

12. Ante la vacante que surgió, la querellada nombró, de manera interina, a la señora González-Carbonell como directora de Finanzas, en las siguientes fechas:

a. 18 de septiembre de 2017;
b. 24 de septiembre de 2018.

13. Al momento de dicha designación, la señora González-Carbonell no había tomado ningún curso de contabilidad o finanzas.

14. Mientras trabajó en el Municipio de Salinas, la señora González-Carbonell no

contaba con un Bachillerato en Finanzas, Administración de Empresas, Contabilidad o áreas afines.

15. Mientras ocupó el puesto de ayudante administrativa de la alcaldesa de Salinas, la señora González-Carbonell no realizó tareas de contabilidad o finanzas ni tenía experiencia previa relacionada a trabajos de contabilidad o finanzas.

16. El 27 de noviembre de 2018, el Sr. Efraín Reyes Quintana, auditor de la OCPR, entrevistó a la señora González-Carbonell y corroboró la preparación académica y experiencia de trabajo que indicaba su expediente de personal, según antes expuesta. Dicha entrevista quedó consignada en una Minuta que incluye la firma de la señora González-Carbonell.

17. Para la fecha de los hechos imputados, la Sra. María E. Rosario Mateo era la directora de Recursos Humanos del Municipio, puesto que ocupó desde enero de 2014 hasta julio de 2020. Sin embargo, actualmente, ocupa el puesto de ayudante administrativa del Municipio de Salinas.

18. En el ejercicio de sus deberes y facultades, la señora Rosario Mateo entrevistó a varios candidatos para ocupar el puesto de director de Finanzas del Municipio de Salinas. En específico, durante marzo de 2018, entrevistó a una candidata, sin resultado.

19. Es de conocimiento público que la isla de Puerto Rico fue impactada por varios desastres naturales. Específicamente, el huracán María impactó en septiembre de 2017, acontecieron varios terremotos a finales de diciembre de 2019 y la pandemia de COVID-19 a partir de marzo de 2020.

20. Desde el 2013 y para la fecha de los hechos imputados, el Lcdo. Frankie Gamalier Torres Fred era asesor legal del municipio de Salinas mediante contrato de servicios profesionales.

21. La querellada y la directora de Recursos Humanos le consultaron al licenciado Torres Fred "sobre la otorgación de un diferencial a la Sra. Jessica González Carbonell, por a esta última habérsele asignado a realizar funciones de directora de Finanzas mientras continuaba

realizando las tareas de ayudante administrativa."

22. La querellada le otorgó a la señora González-Carbonell, en dos ocasiones, un diferencial de $527.00 mensuales. El primero, efectivo el 19 de octubre de 2017, "POR REALIZAR LAS FUNCIONES DE AMBOS PUESTOS". El segundo, efectivo el 24 de octubre de 2018, "POR INTERINATO COMO DIRECTORA DE FINAZAS. LA EMPLEADA REALIZA LAS FUNCIONES DE AMBOS PUESTOS.

23. El Registro de Diferenciales del Municipio de Salinas refleja que ambos diferenciales fueron otorgados "por exceder los 30 días de Interinato como directora de Finanzas sin dejar las funciones de Ayudante Administrativa de la Alcaldesa.

24. La señora González-Carbonell recibió el diferencial durante los siguientes periodos:

    a. desde el 19 de octubre de 2017 hasta el 5 de agosto de 2018, o sea, durante 9 meses y 17 días;
    b. desde el 24 de octubre de 2018 hasta el 31 de julio de 2020, o sea, durante 1 año, 9 meses y 1 semana.

25. Entre la quincena del 30 de noviembre de 2017 y la quincena del 31 de julio de 2020, la señora González-Carboneil recibió desembolsos del Municipio de Salinas por la suma total de $15,914.42, por concepto del pago de diferencial.

26. La señora González-Carbonell presentó su renuncia al cargo de ayudante administrativa y directora de Finanzas interina el 1 de julio de 2020, efectiva el 31 de julio de 2020.

27. El Municipio de Salinas certificó que, entre el periodo de enero de 2017 hasta junio de 2020, no realizó convocatorias para cubrir la vacante del puesto de director de Finanzas.

28. La Legislatura Municipal de Salinas certificó que no recibió ninguna de las designaciones como directora de Finanzas interina a favor de González-Carbonell, realizadas entre el 2013 y 2020.

29. La Legislatura Municipal de Salinas no aprobó ninguna Ordenanza o Resolución con relación a las designaciones de interinato a

favor de la señora Gonzalez-Carbonell realizados entre el 2013 y el 2020.

30.      La Oficina del Contralor de Puerto Rico auditó al Municipio de Salinas y emitió el Informe de Auditoria M-21-33, que contiene una opinión cualificada de las operaciones fiscales de dicha entidad municipal. La auditoría cubrió del 1 de julio de 2014 al 30 de junio de 2018 y, en algunos aspectos, se examinaron transacciones de fechas anteriores y posteriores. Dicho informe contiene la evaluación del cumplimiento con la Ley 81-1991 y del Reglamento de Retribución Uniforme del Municipio de Salinas, aprobado el 22 de abril de 2013, entre otros.

31.      El 9 de marzo de 2021, la Oficina del Contralor de Puerto Rico publicó su Informe de Auditoria M-21-33 del Municipio de Salinas. En esa misma fecha, le notificó copia a la OEG, vía correo electrónico.

En vista de las determinaciones de hechos formuladas, la Oficial Examinadora determinó que las declaraciones juradas eran uno de los métodos evidenciarios permitidos por las reglas de procedimiento civil para sustentar una moción de sentencia sumaria, mas no eran el único método disponible. Además, concluyó que la señora Bonilla, era servidora pública y máxima autoridad del municipio, por lo que tenía facultad de nombrar los sustitutos interinos de los funcionarios que fueran directores administrativos y de otorgar diferenciales. Asimismo, señaló que la recurrente utilizó sus facultades para designar en nueve (9) ocasiones a la señora González como directora de finanzas y, otorgarle un diferencial en sueldo de $527.00 mensuales. Por tanto, razonó que la señora Bonilla desembolsó $15,914.425 a favor de la señora González, lo cual resultó en un beneficio para esta.

De otra parte, resolvió que la señora González no cumplía con los requisitos mínimos de preparación

académica y experiencia para ocupar el puesto de directora de finanzas. A su vez, apuntó que, la recurrente no cumplió con los requisitos para recibir un diferencial por interinato o condiciones extraordinarias, puesto que no desempeñaba de manera interina las funciones del puesto de director de finanzas y, no presentó justificación para otorgar el diferencial por condiciones extraordinarias. Además, resaltó que, la señora Bonilla no presentó prueba para demostrar que la señora González tenía la experiencia para ocupar dicho puesto. En específico, indicó que la declaración jurada presentada por el asesor legal no era prueba suficiente para justificar el pago del diferencial, ni para derrotar la moción de sentencia sumaria. Cónsono con lo anterior, razonó que el diferencial era un beneficio no permitido por ley.

Por último, concluyó que la violación imputada a la señora Bonilla se centró la concesión de un beneficio no permitido por la ley, no en el acto de nombrar, interinamente, a la empleada durante situaciones de emergencia. Aclaró que, la señora González recibió dicho diferencial durante dos (2) años, seis (6) meses y tres (3) semanas. Ello, demostró que la designación no fue temporera. Por todo lo anterior, determinó que la omisión de la recurrente provocó que el municipio desembolsara dinero contrario a la Ley. En consecuencia, resolvió que la señora Bonilla infringió los incisos b y r del Art. 4.2 de la Ley Núm. 1- 2012, *supra*.

El 29 de febrero de 2024, fue notificada la *Resolución* por el director ejecutivo de la OEG. Mediante esta, acogió la totalidad del *Informe de la Oficial*

*Examinadora* y, determinó que la señora Bonilla incurrió en una violación a los incisos (b) y (r) del Art. 4.2 de la Ley Núm. 1-2012, *supra*.[11] Asimismo, le impuso a la recurrente una multa administrativa de $2,000.00 por cada una de las infracciones cometidas, para un total de $4,000.00. A su vez, conforme al Art. 4.7 (c) de la Ley Núm. 1-2012, *supra*, le ordenó la restitución por la cantidad de $15,914.42.

Inconforme con dicha determinación, el 26 de marzo de 2024, la señora Bonilla presentó el recurso de epígrafe donde le imputó a la OEG la comisión de los siguientes errores:

> La OEG procedió de manera arbitraria e irrazonable al resolver el caso mediante el mecanismo de adjudicación sumaria, privando a la parte querellada de su día en corte, al hacer determinaciones de hechos que no tienen sustento en la prueba presentada y sin que estén presentes los elementos constitutivos del Artículo 4.2(b) de la Ley 1-2012.

> La OEG procedió de manera arbitraria e irrazonable al determinar que se violó el Artículo 4.2(r) sin considerar las condiciones extraordinarias provocadas por el paso de María, los terremotos en el área sur y la pandemia del COVID-19, que justificaron la autorización del diferencial.

> LA OEG procedió de manera arbitraria e irrazonable al procesar y sancionar selectivamente a la parte querellada, mientras o hace nada contra el Gobernador de Puerto Rico sobre hechos similares y contra ex alcaldes electos bajo la insignia del partido nuevo progresista.

> La OEG procedió de manera arbitraria e irrazonable al sancionar a la parte querellada cuando ya la Oficina del Contralor había atendido la situación mediante el mecanismo de plan de acción correctiva.

Por su parte, el 25 de abril de 2024, la OEG presentó su *Alegato en Oposición*. Con el beneficio de

---

[11] *Resolución*, Anejo VIII, pág. 274 del apéndice del recurso.

la comparecencia de ambas partes, procedemos a disponer del asunto ante nuestra consideración.

## II.

## -A-

La Ley Núm. 38 del 30 de junio de 2017, 3 LPRA 9601 *et seq.*, conocida como la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), tiene como objetivo proporcionar a la ciudadanía servicios públicos de calidad, eficiencia y prontitud, interpretándola y aplicándola de manera liberal para lograr estos propósitos, siempre protegiendo las garantías básicas del debido proceso de ley. En respuesta a ello, dicha ley habilita la disposición sumaria de las controversias bajo ciertas circunstancias. Particularmente, la sección 3.7 de la LPAU, *supra*, dispone lo siguiente:

> (b) Si la agencia determina a solicitud de alguna de las partes y luego de analizar los documentos que acompañan la solicitud de orden o resolución sumaria y los documentos incluidos con la moción en oposición, así como aquéllos que obren en el expediente de la agencia, que no es necesario celebrar una vista adjudicativa, podrá dictar órdenes o resoluciones sumarias, ya sean de carácter final, o parcial resolviendo cualquier controversia entre las partes, que sean separable de las controversias, excepto en aquellos casos donde la ley orgánica de la agencia disponga lo contrario.
>
> **La agencia no podrá dictar órdenes o resoluciones sumarias en los casos en que (1) existen hechos materiales o esenciales controvertidos; (2) hay alegaciones afirmativas en la querella que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la petición una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derechos no procede.** 3 LPRA sec. 9647. (Énfasis suplido).

De igual forma, el Art. 6.11 del Reglamento Núm. 8231 de 18 de junio de 2012, conocido como *Reglamento sobre Asuntos Programáticos de la Oficina de Ética*

*Gubernamental de Puerto Rico*, (Reglamento Núm. 8231) regula el uso de la resolución sumaria en los procedimientos administrativos ante la Oficina de Ética Gubernamental. En específico, establece que:

Cualquier parte podrá solicitar la resolución sumaria de todas o de cualquiera de las controversias a ser ventiladas en una audiencia mediante la presentación de una moción con no menos de veinte días calendario de antelación a dicha audiencia. La moción establecerá que no existe controversia de hecho esencial que haya que determinar en la audiencia y estará fundada en documentos, sin limitarse a: declaraciones juradas, certificaciones, grabaciones, videos o fotografías.

Cabe precisar que, por lo general, las Reglas de Procedimiento Civil no aplican automáticamente a los procedimientos administrativos. *Pérez v. VPH Motors Corp.*, 152 DPR 475, 484 (2000). Sin embargo, el Tribunal Supremo de Puerto Rico ha establecido que en casos apropiados se pueden adoptar normas de procedimiento civil para guiar el desarrollo del proceso administrativo, siempre que no sean incompatibles y contribuyan a una solución justa, rápida y económica de los casos. *Íd.* pág. 484. Tomando esto en consideración, y reconociendo que la LPAU contempla la resolución sumaria de controversias, se extiende la aplicación de las disposiciones de la Regla 36 de Procedimiento Civil a dichos casos sumarios. 32 LPRA Ap. V, R. 36.

**-B-**

Es norma conocida que los tribunales apelativos debemos otorgar amplia deferencia a las decisiones emitidas por las agencias administrativas, puesto que estas cuentan con vasta experiencia y pericia para atender aquellos asuntos que se les han sido delegados por la Asamblea Legislativa. *Oficina de Ética*

*Gubernamental v. Martínez Giraud*, 210 DPR 79, 88-89 (2022); *Super Asphalt v. AFI y otros*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 126 (2019)*.* Por estas razones, dichas determinaciones suponen una presunción de legalidad y corrección, que a los tribunales nos corresponde respetar, mientras la parte que las impugne no presente prueba suficiente para derrotarlas. *Oficina de Ética Gubernamental v. Martínez Giraud*, supra; *Batista, Nobbe v. Jta. Directores,* 185 DPR 206, 216 (2012**).** **No obstante, tal norma no es absoluta, por ello nuestro Máximo Foro ha enfatizado que no podemos imprimirle un sello de corrección, so pretexto de deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho.** (Énfasis suplido).

En *Torres Rivera v. Policía de Puerto Rico*, supra, pág. 628, nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial de la forma siguiente:

> Los tribunales deben deferencia a las decisiones de una agencia administrativa, pero tal deferencia cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que, si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida.

Del mismo modo, la Sección 4.5 de la Ley Núm. 38 del 30 de junio de 2017, 3 LPRA 9675, conocida como la

*Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), estableció el marco de revisión judicial de las agencias administrativas. *Rolón Martínez v. Supte. Policía*, supra. La intervención del tribunal se limita a tres (3) áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas. 3 LPRA sec. 9675. Véase, además: *Oficina de Ética Gubernamental v. Martínez Giraud*, supra; *Torres Rivera v. Policía de PR,* supra. Por lo tanto, aquellas determinaciones de hechos formuladas por el ente administrativo deberán sostenerse cuando estén basadas en evidencia sustancial que surja del expediente administrativo considerado en su totalidad. *Oficina de Ética Gubernamental v. Martínez Giraud*, supra; *Super Asphalt v. AFI y otros*, supra.

Ahora bien, las determinaciones de derecho pueden ser revisadas en su totalidad. Sec. 4.5 LPAU, 3 LPRA sec. 9675. Véase, además: *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Torres Rivera v. Policía de PR*, supra, pág. 627. Sin embargo, los tribunales deberán brindarle deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra. *Rolón Martínez v. Supte. Policía*, supra; *Torres Rivera v. Policía de PR*, supra. **Esto, pues nuestro Tribunal Supremo ha dispuesto que la deferencia que le deben los tribunales a la interpretación que haga el ente administrativo sobre aquellas leyes y**

**reglamentos que le corresponde poner en vigor, cede si la agencia: (1) erró al aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente, o (3) lesionó derechos constitucionales fundamentales.** *Íd.; Oficina de Ética Gubernamental v. Martínez Giraud*, supra. (Énfasis nuestro).

Finalmente, destacamos que el criterio administrativo no podrá prevalecer en aquellas instancias donde la interpretación estatutaria realizada por una agencia provoque un resultado incompatible o contrario al propósito para el cual fue aprobada la legislación y la política pública que promueve. Lo anterior ya que la deferencia judicial al *expertise* administrativo, concedido cuando las agencias interpretan la ley, tiene que ceder ante actuaciones que resulten irrazonables, ilegales o que conduzcan a la comisión de una injusticia. *Íd.*

-C-

La Ley Núm. 1-2012, según enmendada, conocida como la *Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico*, 3 LPRA sec. 1854, fue aprobada con el propósito principal de renovar y reafirmar la función preventiva y fiscalizadora de la OEG. Exposición de Motivos, (Ley Núm. 1-2012). En nuestro ordenamiento, es el estatuto regente de la conducta de los servidores y exservidores públicos de la Rama Ejecutiva. 3 LPRA sec. 1857; véase, además: *Oficina de Ética Gubernamental v. Martínez Giraud*, 210 DPR 79, 91 (2022). Como parte de su misión, la OEG tiene la encomienda de fiscalizar la conducta de los servidores públicos y penalizar a los que transgreden la normativa ética que integra los

valores del servicio público, mediante los mecanismos y recursos que provee la Ley.  3 LPRA sec. 1855.

En el Artículo 1.2 de la Ley Núm. 1-2012, *supra*, es necesario destacar la definición de: (1) "agencia", la cual se define como "los organismos de la Rama Ejecutiva del Gobierno, las corporaciones públicas, los municipios y sus legislaturas, las corporaciones especiales para el desarrollo municipal, los consorcios municipales, las juntas y aquellas entidades que estén bajo la jurisdicción de esta Rama"; (2) "beneficio", el cual es "cualquier provecho, utilidad, lucro o ganancia, sin limitar el término a una ganancia pecuniaria o material, sino que denota cualquier forma de ventaja"; y (3) "servidor público", el cual viene siendo una "persona en el Gobierno que interviene en la formulación e implantación de la política pública o no, aunque desempeñe su encomienda permanente o temporalmente, con o sin remuneración".  3 LPRA sec. 1854.

Por otra parte, el Artículo 2.3 de la Ley Núm. 1-2012, *supra*, le provee a la OEG, facultades y poderes, de los cuales se destacan las siguientes: (1) interpretar, aplicar y hacer cumplir las disposiciones de la referida Ley y de los reglamentos creados a su amparo; (2) designar oficiales examinadores o jueces administrativos para presidir los procesos de adjudicación ante la presentación de querellas; (3) establecer y administrar procedimientos para identificar violaciones a la ética gubernamental y tomar medidas disciplinarias, administrativas o civiles autorizadas por la propia Ley, los cuales incluyen investigaciones y audiencias en las que se le provea a las partes la oportunidad de ser oídas y de defenderse; y (4) emitir

órdenes de retención y descuento contra los fondos acumulados del servidor o ex servidor público que incumpla con una multa administrativa final y firme, entre otras facultades y poderes.

Cónsono con lo anterior, la Ley Núm. 1-2012, *supra*, instituyó un Código de Ética para los Servidores Públicos y ex servidores Públicos de la Rama Ejecutiva para reglamentar la conducta de estos funcionarios del ejecutivo. Artículos 4.1 a 4.8, 3 LPRA secs. 1857-1857g de la Ley Núm. 1-2012. Entre la serie de prohibiciones éticas de carácter general que establece el Art. 4.2 del estatuto se destacan las siguientes. En primer lugar, el inciso (b) del referido Artículo dispuso: "[u]n servidor público no puede utilizar los deberes y las facultades de su cargo ni la propiedad o los fondos públicos para obtener, directa o indirectamente, para él o para una persona privada o negocio, cualquier beneficio que no esté permitido por ley". 3 LPRA sec. 1857a. En segundo lugar, el inciso (r) dispone que: "[u]n servidor público no puede omitir el cumplimiento de un deber impuesto por ley o reglamento, si con ello ocasiona la pérdida de fondos públicos o produce daño a la propiedad pública". *Íd.*

Para sancionar y penalizar los incumplimientos con el Código de Ética, el Art. 4.7 de la precitada ley autorizó la presentación de acciones penales, civiles y administrativas. Respecto a la acción administrativa, se estableció que "[t]oda persona que viole las prohibiciones y disposiciones establecidas en este Capítulo y en los reglamentos, en las órdenes o en las normas promulgadas a su amparo puede ser castigada por la Dirección Ejecutiva con multa administrativa, que no

excederá de veinte mil (20,000) dólares por cada violación". 3 LPRA sec. 1857f. Asimismo, le otorgó a la Dirección Ejecutiva de la OEG facultades como la de imponer una sanción de triple daño adicional a la multa administrativa, ordenar la restitución y mandatar el descuento de la nómina del servidor público hasta completar el pago de la multa. *Íd*. Por último, el servidor público o ex servidor público afectado por la acción administrativa tiene derecho a presentar una solicitud de revisión bajo el Art. 4.2 de la LPAU, *supra*.

Por otra parte, el Capítulo VII de la Ley Núm. 1-2012, *supra*, reglamenta el proceso de investigación, adjudicación y revisión judicial respecto al Código de Ética antes descrito. Respecto al procedimiento de adjudicación, el Art. 7.2 establece:

> Una vez concluya la investigación aludida en el Artículo 7.1 y la Oficina entienda que se ha violado alguna disposición establecida en esta Ley, en los reglamentos, en las órdenes o en las normas promulgadas a su amparo, presentará una querella y llevará a cabo un procedimiento de adjudicación, de conformidad con la Ley de Procedimiento Administrativo Uniforme, Ley Núm. 170 de 12 de agosto de 1988, según enmendada. 3 LPRA sec. 1860a.[12]

Por último, el Art. 7.3 de la Ley Núm. 1-2012, *supra*, prescribe el derecho de todo servidor a presentar un recurso de revisión judicial ante el Tribunal de Apelaciones, en conformidad con la LPAUG, si resulta afectado en un proceso adversativo llevado a cabo en la OEG que dé por terminado el asunto. 3 LPRA sec. 1860b.

-C-

La Ley Núm. 81 de 30 de agosto de 1991 intitulada *Ley de Municipios Autónomos de Puerto Rico*, 31 LPRA sec.

---

[12] La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38-2017, derogó y sustituyó a la Ley Núm. 170-1988.

4001 *et seq.* (Ley Núm. 81 de 1991) creó los mecanismos para que los municipios tengan los poderes y facultades esenciales al funcionamiento gubernamental democrático efectivo. En lo pertinente, el Art. 3009 de la Ley Núm. 81 de 1991, *supra*, dispone que:

> El alcalde será la máxima autoridad de la Rama Ejecutiva del gobierno municipal y en tal calidad le corresponderá su dirección, administración y la fiscalización del funcionamiento del municipio. El alcalde tendrá los deberes y ejercerá las funciones y facultades siguientes:
>
> […]
>
> (c) Promulgar y publicar las reglas y reglamentos municipales.
>
> (d) Cumplir y hacer cumplir las ordenanzas, resoluciones, reglamentos y disposiciones municipales debidamente aprobadas.
>
> […]
>
> (m) Diseñar, formular y aplicar un sistema de administración de personal para el municipio, de acuerdo con las disposiciones de esta ley y los reglamentos adoptados en virtud del mismo y promulgar las reglas a que estarán sujetos los funcionarios y empleados municipales en el cumplimiento de sus deberes y obligaciones.
>
> […]
>
> (o) Nombrar todos los funcionarios y empleados y separarlos de sus puestos cuando sea necesario para el bien del servicio, por las causas y de acuerdo al procedimiento establecido en esta ley.
>
> **(p) Nombrar los sustitutos interinos de los funcionarios que sean directores de unidades administrativas en caso de ausencia temporal o transitoria de éstos. Las personas designadas para sustituir interinamente a tales funcionarios, podrán ser empleados de la unidad administrativa en que ocurra la ausencia.** 21 LPRA sec. 4109. (Énfasis suplido).

Específicamente, el Art. 6.002 de la Ley Num. 81 de 1991, *supra*, expresa que:

> […] **En el caso del Director de Recursos Humanos y del Director de Finanzas, deberán cumplir con el requisito mínimo de un**

**bachillerato en la especialidad o en un área relacionada con la posición para la cual se le considera.** (Énfasis suplido).

[…]

**Cuando se determine que existe dificultad en el reclutamiento de algún funcionario bajo los requisitos de ley establecidos para el puesto, el Primer Ejecutivo Municipal podrá someter a la consideración de la Legislatura Municipal y ésta podrá considerar otros candidatos cualificados para el puesto a tenor con las disposiciones y requisitos alternos de reclutamiento establecidos en el Plan de Clasificación y Retribución y la Reglamentación de personal vigente de aplicación a los empleados de confianza. En el caso de que un municipio se determine que la dificultad en el reclutamiento de los nombramientos a los puestos de Director de Recursos Humanos o de Finanzas prevalece, el Primer Ejecutivo Municipal podrá someter a la consideración de la Legislatura Municipal otros candidatos que posean el requisito mínimo de por lo menos cuatro (4) años de experiencia en un municipio en trabajos estrechamente relacionados con las funciones que desempeñará.** 21 LPRA sec. 4252. (Énfasis nuestro).

En apoyo a lo anterior, el Art. 6.005 de la referida Ley dispone lo siguiente:

Todo municipio establecerá una Unidad Administrativa de Finanzas, la cual será dirigida por una persona que posea los requisitos establecidos en el Artículo 6.002 de esta ley, que goce de buena reputación en la comunidad y, además, reúna aquellos otros requisitos que se dispongan en el plan de puestos para el servicio de confianza que apruebe la legislatura municipal. 21 LPRA sec. 4255.

Respecto a la retribución, el inciso (e) del Art. 11.015 la Ley Núm. 81 de 1991, 21 LPRA sec. 4565, establece que: [e]l alcalde preparará planes de retribución separados para los empleados de la Rama Ejecutiva del Gobierno Municipal en los servicios de carrera y de confianza. Prescribe que, además del salario mensual, los Municipios podrán utilizar otros métodos de compensación para retener, motivar, y reconocer al personal. Algunos de estos mecanismos son:

(1) Diferenciales — es una compensación temporera especial, adicional y separada del sueldo regular del empleado, que se concede para mitigar circunstancias extraordinarias que de otro modo podrían considerarse onerosas para el empleado. Los diferenciales se podrán conceder por:

a) Condiciones extraordinarias — situación de trabajo temporera que requiere un mayor esfuerzo o riesgo para el empleado, mientras lleva a cabo las funciones de su puesto.
b) Interinato — situación de trabajo temporera en la que el empleado desempeña todas las funciones esenciales de un puesto superior al que ocupa en propiedad. Serán requisito las siguientes condiciones: haber desempeñado las funciones sin interrupción por treinta (30) días o más; haber sido designado oficialmente a ejercer las funciones interinas por el director del departamento u oficina y cumplir los requisitos de preparación académica y experiencia del puesto cuyas funciones desempeña interinamente. El empleado interino podrá ser relevado del interinato en cualquier momento que así lo determine el Alcalde o la persona que éste designe.[13] 21 LPRA sec. 4565.

**–D–**

El *Reglamento de Retribución* aprobado el 22 de abril de 2013, mediante ordenanza núm. 25 serie 2012-2013 (Reglamento de Retribución), regula la retribución de sus empleados de carrera y confianza. Particularmente, la sección 6.2 del Reglamento de Retribución dispone que, "toda persona que vaya a ocupar u puesto en el servicio público, sea mediante nombramiento original o cualquier otra acción de personal, deberá reunir los requisitos mínimos de preparación académica y de experiencia que se establezcan para la clase de puesto correspondiente".

---

[13] El Art. 11.01 A de la Ley 81 de 1991 define interinatos como los servicios temporeros que rinde un empleado de carrera o de confianza en un puesto cuya clasificación es superior a la del puesto para el cual tiene nombramiento oficial, en virtud de una designación escrita de parte de la autoridad nominadora o su representante autorizado y en cumplimiento de las demás condiciones legales aplicables.

Al igual que la Ley Núm. 81 de 1991, supra, el inciso 4 de la sección 5.4 del Reglamento establece que, el municipio podrá utilizar otros métodos de compensación para retener, motivar, y reconocer al personal. Algunos de estos métodos son los siguientes:

a. Diferenciales - es una compensación temporera especial, adicional y separada del sueldo regular del empleado, que se concede para mitigar circunstancias extraordinarias que de otro modo podrían considerarse onerosas para el empleado. Los diferenciales se podrán conceder por:

1) Condiciones extraordinarias - situación de trabajo temporera que requiere un mayor esfuerzo o riesgo para el empleado, mientras lleva a cabo las funciones de su puesto.

2) Interinato - situación de trabajo temporero en la que el empleado desempeña todas las funciones esenciales de un puesto superior al que ocupa en propiedad. En este caso, serán requisito las siguientes condiciones: haber desempeñado las funciones sin interrupción par treinta (30) días o más; haber sido designado oficialmente a ejercer las funciones interinas por el director del departamento u oficina y cumplir los requisitos de preparación académica y experiencia del puesto cuyas funciones desempeña interinamente.

Asimismo, la sección 8.6 del Reglamento de Retribución expresa que, el (la) Alcalde(sa) podría autorizar la concesión de diferenciales en sueldo a aquellos empleados que ocupen puestos en clases comprendidas en los Planes de Clasificación para el servicio de carrera y confianza cuando estén presentes y justificadas las siguientes condiciones:

1. cuando exista dificultad extraordinaria para reclutar o retener personal en determinados puestos;

2. cuando la ubicación geográfica del puesto lo justifique;

3. cuando las condiciones extraordinarias de trabajo la justifiquen (trabajar sábado, domingo, días feriados o fuera de horas

laborales, riesgo, turnos rotativos, turnos fijos, áreas especializadas, tareas de riesgos altos para la salud y la seguridad, dificultad en retener en las tareas, entre otras);

4. cuando el puesto en particular requiera algún o algunos conocimientos especiales (Son conocimientos adicionales a los requisitos mínimos de la clase, que sólo son necesarios para determinados puestos de la clase, que son imprescindibles para desempeñar en ese puesto y que tienen relación directa con los deberes y responsabilidades del mismo), y

5. cuando un empleado, mediante designación oficial asuma, los deberes y responsabilidades normales de un cargo o puesto de carrera o confianza con clasificación superior al que ocupa en propiedad por un período ininterrumpido que exceda los tres (3) meses y que al momento de tal designación reúna los requisitos mínimos para el cargo o puesto.

[…]

El mecanismo del diferencial es uno de naturaleza extraordinaria y por consiguiente, se utilizará en forma juiciosa y restringida.

[…]

### III.

Mediante el recurso de epígrafe, la señora Bonilla, argumenta que la OEG incidió al resolver el caso mediante el mecanismo de adjudicación sumaria, privándola de su día en corte, al hacer determinaciones de hechos que no tenían sustento en la prueba presentada y sin que estuvieran presentes los requisitos del Artículo 4.2(b) de la Ley Núm. 1-2012, *supra*. A su vez, plantea que la agencia recurrida erró al determinar que se violó el Art. 4.2(r) sin considerar las condiciones extraordinarias provocadas por el paso de María, los terremotos y la pandemia del COVID-19, las cuales justificaron la autorización del diferencial. De otra parte, alega que la OEG procedió de manera arbitraria e irrazonable al procesarla y sancionarla, mientras no hizo nada contra el Gobernador de Puerto Rico sobre hechos similares y ex alcaldes electos del partido nuevo

progresista. Por último, aduce que la agencia recurrida incidió al imponerle sanciones cuando la Oficina del Contralor había atendido la situación mediante el mecanismo de plan de acción correctiva. *Veamos.*

Discutiremos los señalamientos de error en conjunto, dado que están relacionados entre sí. Conforme a la normativa antes expuesta, la sección 3.7 de la LPAU, *supra*, dispone que, si la agencia determina a solicitud de alguna de las partes y luego de analizar los documentos que acompañan la solicitud y los documentos incluidos en la oposición, así como aquéllos que obren en el expediente de la agencia, que no es necesario celebrar una vista adjudicativa, podrá dictar órdenes o resoluciones sumarias, ya sean de carácter final, o parcial. Sin embargo, aclara que la agencia no podrá dictar órdenes o resoluciones sumarias en los casos en que existen hechos materiales o esenciales controvertidos o surge de los documentos que se acompañan con la petición una controversia sobre algún hecho material y esencial, entre otras circunstancias.

A su vez, el Art. 6.11 del Reglamento Núm. 8231 del *Reglamento sobre Asuntos Programáticos,* supra, establece que, cualquier parte podrá solicitar la resolución sumaria de todas o de cualquiera de las controversias a ser ventiladas en una audiencia mediante la presentación de una moción. Dicha moción establecerá que no existe controversia de hecho esencial que haya que determinar en la audiencia y estará fundada en documentos, sin limitarse a declaraciones juradas, entre otros.

Luego de examinar el expediente en su totalidad, colegimos que la OEG presentó su *Moción Solicitando Adjudicación Sumaria* en la cual señaló en párrafos

enumerados los hechos sobre los cuales no existía controversia. Además, acompañó los documentos pertinentes para sustentar sus alegaciones. Por su parte, la recurrente presentó su *Oposición a: "Moción Solicitando Adjudicación Sumaria*, en cual desglosó los hechos sobre los cuales entendía que existía controversia, por lo que procedía celebrar una vista administrativa. De igual forma, acompañó las declaraciones juradas que entendió pertinentes para sustentar sus argumentos. A tenor con lo anterior, determinamos que ambas partes cumplieron con la sección 3.7 de la LPAU, *supra*, así como la Art. 6.11 del Reglamento Núm. 8231, *supra*.

Conforme a la normativa antes expuesta, las determinaciones de la *Resolución* recurrida están amparadas por una presunción de legalidad y corrección, frente a las cuales este Foro debe ser cauteloso al intervenir. La deferencia que se reconoce a la decisión de la agencia recurrida cederá cuando no se fundamente en evidencia sustancial, cuando la agencia se equivoque en la aplicación de la ley o cuando la actuación sea arbitraria, irrazonable o ilegal. Sin embargo, es meritorio señalar que ante una moción de sentencia sumaria estamos en igual posición que la OEG.

Surge del expediente ante nuestra consideración y de los documentos que acompañan la *Moción Solicitando Adjudicación Sumaria* que existe controversia con relación a la experiencia que tenía la señora González para ocupar el puesto de directora interina de finanzas. En específico, la solicitud de empleo de la oficina de Recursos Humanos del municipio de Salinas de enero de 2013 refleja que la señora González laboró en el

municipio de Guánica como directora del Programa de Fondos Federales, desde 1 de diciembre de 2010 hasta el 31 de diciembre de 2012. Asimismo, enfatizó que las funciones de dicho puesto eran dirigir fondos CDBG, sección 8, ordenación territorial y planificación. De igual forma, la solicitud de empleo revela que la señora González trabajó en el municipio de Guánica como ayudante especial de planificación, desde 1 de enero de 2019 hasta el 30 de noviembre de 2010. Por último, dicha solicitud de empleo manifiesta que la señora González laboró en el municipio de Guánica como directora de Obras Públicas, desde el 3 de enero de 2006 hasta el 31 de diciembre de 2008. Particularmente, indicó que sus funciones eran administrar, coordinar las actividades de ornato, saneamiento, reciclaje y servicio a los ciudadanos.

Dicho lo anterior, resolvemos que existía controversia de hechos con relación a si la señora González tenía la experiencia para ejercer dicho puesto. Nótese que, cuando el candidato no posee la preparación académica, la Ley Núm. 81 de 1991 dispone un método alterno para que este pueda ocupar el puesto. Ello, siempre que posea la experiencia requerida en dicha Ley. Cónsono con lo anterior, cabe precisar que, al sumar el término de los puestos que ocupó en el documento de la solicitud de empleo, la señora González poseía una experiencia de seis (6) años y diez (10) meses aproximadamente en puestos que requerían conocer y velar por el presupuesto de la agencia en particular. Nótese que, al revisar las funciones que esta ejercía en dichos puestos, era evidente que tenía experiencia en manejar las finanzas del municipio de Guánica.

Así pues, concluimos que las determinaciones de hecho establecidas por la agencia recurrida fueron irrazonables y lesionaron el debido proceso de ley de la señora Bonilla, ya que no analizaron en su totalidad los documentos de la *Moción Solicitando Adjudicación Sumaria*, en conjunto con los requisitos para ocupar el puesto de directora interina de finanzas. Es decir, la evidencia que obra en el expediente no sustenta las determinaciones de la OEG, al concluir que la señora Bonilla nombró a la señora González, aun cuando esta carecía de la experiencia que exigía la Ley Núm. 81 de 1991. Por tanto, procedía celebrar la vista adjudicativa.

De otra, no nos convence el argumento de la OEG, con relación a que la intención de la recurrente era nombrar a la señora González al puesto de directora de Fianzas en propiedad. Particularmente, no nos persuade, el hecho que de no se realizaron convocatorias durante el año 2017 hasta el año 2020. Ello, a los fines de que la señora González ejerciera dicho puesto en propiedad, a pesar, de que la carta de designación exponía, claramente, que dicho nombramiento era de manera interina. Entiéndase que, todas las cartas que remitió la señora Bonilla con relación a la designación de la señora González era como directora interina de finanzas. En particular, no podemos concluir, como lo hace la OEG, que la designación fuera de carácter permanente, pues en casi ocho (8) años la señora González fue nombrada con carácter interino en siete (7) ocasiones.

Por todo lo anterior, colegimos que la agencia recurrida, actuó de manera irrazonable o contraria a derecho al acoger la solicitud de adjudicación sumaria

presentada por la OEG. A su vez, la parte recurrente presentó argumentos que nos obligan a resolver que las determinaciones de hechos y las conclusiones de derecho que realizó la OEG están en controversia. Por tanto, es forzoso concluir existe controversia de hechos que impedía al a OEG adjudicar el caso de epígrafe sumariamente. En consecuencia, determinamos que se privó de su debido proceso de ley a la recurrente. Así pues, procede celebrar una vista adjudicativa para determinar si la designación de la señora González era de manera interina o en propiedad y, si cumplía con los requisitos de Ley y Reglamento para ocupar el puesto de directora de finanzas.

Por lo tanto, determinamos que la agencia recurrida cometió los errores señalados por la señora Bonilla, por lo que procede llevar a cabo una vista adjudicativa conforme a lo antes expuesto para que ambas partes presenten toda la prueba que sea pertinente a sus respectivas posiciones.

**IV.**

Por los fundamentos antes expuestos, se **REVOCA** la *Resolución* recurrida.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones